**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| **EDWARD W. REYNOLDS and ERIN L. REYNOLDS, individually and on behalf of their minor children, A.R. and E.R.; A.B., a minor child by and through Next Friend, EDWARD W. REYNOLDS; MONICA C. SCHAFER; and CHRISTOPHER D. JOHNECHECK,** | **COMPLAINT**<br><br>**FILE NO:**_____ |

        **Plaintiffs,**

-vs-

**GREG TALBERG, individually and in his official capacity as member of the Williamston Community School District Board; CHRISTOPHER LEWIS, individually and in his official capacity as a member of the Williamston Community School District Board; NANCY DEAL, individually and in her official capacity as a member of the Williamston Community School District Board; SARAH BELANGER, individually and in her official capacity as a member of the Williamston Community School District Board; KATHY HAYES, individually and in her official capacity as a member of the Williamston Community School District Board; JOEL GERRING, individually and in his official capacity as a member of the Williamston Community School District Board; and the WILLIAMSTON COMMUNITY SCHOOL DISTRICT,**

        **Defendants.**

                          /

**GREAT LAKES JUSTICE CENTER:**
**David A. Kallman**         **(P34200)**
**Stephen P. Kallman**      **(P75622)**
**Erin E. Mersino**          **(P70886)**
**Attorneys for Plaintiffs**
**5600 W. Mount Hope Hwy.**
**Lansing, MI  48917**
**(517) 322-3207**

GREAT LAKES JUSTICE CENTER

**NOW COME** the above-named Plaintiffs, by and through their undersigned counsel, and together bring this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof allege the following upon information and belief:

## INTRODUCTION

1.      This case seeks to protect and vindicate statutory and fundamental constitutional rights. Plaintiffs bring a civil rights action under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and for other statutory and constitutional violations, challenging Defendants' acts, policies, practices, customs, and procedures, which deprived Plaintiffs and their children of their right to privacy, self-autonomy and personal identity, and freedom of speech. Defendants unjustly discriminate against Plaintiffs because of their sincerely held religious beliefs and their viewpoints by adding specially protected categories of "sexual orientation," "gender expression," and "gender identity" to Defendants' non-discrimination and gender/transgender policies and practices. Specifically, Defendants' non-discrimination and gender/transgender policies and practices seek to silence and punish Plaintiffs' sincerely held religious beliefs and viewpoint.

2.      As set forth in this Complaint, the policies, practices, customs, and procedures of Defendants (hereinafter collectively referred to as "School District") were the cause of, and the moving force behind, the statutory and constitutional violations in this case.

3.      Plaintiffs seek injunctive relief enjoining the unconstitutional application of the School District's policies, practices, customs and procedures as set forth in this Complaint; a declaration that Defendants violated Plaintiffs' clearly established statutory and constitutional rights; a declaration that the training, supervision, policies, practices, customs, and procedures of the School District as set forth in this Complaint violate the United States Constitution and the

GREAT LAKES JUSTICE CENTER

Michigan Constitution; and a judgment awarding nominal damages and compensatory damages for the loss of Plaintiffs' constitutional rights. Plaintiffs also seek an award of their reasonable costs of litigation, including attorneys' fees and costs, pursuant to 42 U.S.C. §1988 and other applicable law.

## JURISDICTION AND VENUE

4.      This action arises under the Constitution and laws of the United States and of the State of Michigan. Jurisdiction is conferred on this court pursuant to 28 U.S.C. § 1331 and 1343, as well as under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.,* and 42 U.S.C. § 1983, and other Federal and State laws and regulations, to redress violations of federal statutes and state law.

5.      This Court has jurisdiction pursuant to Article III of the United States Constitution, 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(1), (2), (3), and (4). Declaratory relief is authorized pursuant to 28 U.S.C. § 2201 and 2202.

6.      This Court has supplemental jurisdiction regarding the remaining state claims pursuant to 28 U.S.C. § 1367.

7.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. § 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this court. Plaintiffs' claims for damages are authorized under 42 U.S.C. § 1983, 42 U.S.C. § 2000d-7, and by the general legal and equitable powers of this court.

8.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

GREAT LAKES JUSTICE CENTER

## PLAINTIFFS

9.      Plaintiffs Edward W. Reynolds and Erin L. Reynolds are married and residents in the Williamston public school district in the State of Michigan. They are the parents of two children who were enrolled in the School District. Plaintiffs, as part of their personal identity and autonomy, raise their children in their religious faith and have been forced as a matter of conscience to remove their children from the School District as a direct result of the Defendants' actions, policies, practices, customs, and procedures that give rise to this case. Plaintiffs bring this action on behalf of their children, A.R. and E.R., as their next of kin. Named Plaintiffs A.R. and E.R. appear through their next friend, Edward W. Reynolds, who is sufficiently familiar with the facts of each child's situation to fairly and adequately represent each child's interests in this litigation, and Edward W. Reynolds requests that this Honorable Court recognize and appoint him as the next friend for A.R. and E.R.

10.     Plaintiff A.B. is a minor student at the School District and a resident of the Williamston public school district in the State of Michigan whose constitutional and statutory rights are being infringed upon as a direct result of Defendants' policies and actions. Edward W. Reynolds requests that this Honorable Court recognize and appoint him as the next friend for A.B., who also respectfully requests that A.B.'s identity remain undisclosed because of the sensitive nature of the government action in this case, to protect his privacy, and to avoid retaliation or harassment.

11.     Plaintiff Monica C. Schafer is a resident of the Williamston public school district in the State of Michigan. She is the mother of children currently enrolled in the School District. Plaintiff Schafer, as part of her personal identity and autonomy, raises her children in her religious faith which is being infringed upon as a direct result of Defendants' actions.

4

12.     Plaintiff Christopher D. Johnecheck is a resident of the Williamston public school district in the State of Michigan. He is the father of children currently enrolled in Defendants' school district. Plaintiff Johnecheck, as part of his personal identity and autonomy, raises his children in his religious faith which is being infringed upon as a direct result of Defendants' actions.

13.     Plaintiffs are Christians who adhere to the teachings of the Bible and are morally bound to follow the universal, consistent moral teaching of the Christian faith. All Plaintiffs find their dignity, personal identity, and autonomy in the exercise of their sincerely held Christian religious beliefs.

14.     Plaintiffs do not oppose or demean any person for who they truly are as a person. Plaintiffs oppose the conduct choices now being promoted by the School District, and the resulting violation of Plaintiffs' statutory and constitutional rights.

15.     Plaintiffs sincerely believe the Bible's teaching on sexual orientation and gender reiterates a truth that is evident to right reason and recognized as such by all the major cultures of the world.

16.     Plaintiffs sincerely believe the Bible teaches that human beings were created male and female and that gender is neither fluid nor a social construct.

17.     Plaintiffs sincerely believe that a person's sex is established by the Creator with its own nature, essential properties, and purpose.

18.     As part of their personal identity and autonomy, Plaintiffs sincerely believe that they have a duty and obligation to live out their faith in all areas of life, including defending their faith in public. The School District's policies punish them and their children for exercising their constitutionally and statutorily protected rights.

5

**DEFENDANTS**

19.     The Williamston Community School District is a public state entity established and organized under, and pursuant to, the laws of the State of Michigan with the authority to sue and be sued in its own name. Defendant operates numerous schools located within the School District. At all times relevant, the School District and School Board have acted and continue to act under color of state law.

20.     The School District and its officials are responsible for creating, adopting, approving, ratifying, and enforcing the policies, practices, customs and procedures of the district, including the challenged policies, practices, customs, and procedures set forth in this Complaint.

21.     Greg Talberg is an individual and School District school board member and board President who voted in favor of the policies at issue in this case. As a school board member, he requires the students and parents of the School District to comply with the contested policies set forth in this Complaint. Defendant Talberg violated Plaintiffs' clearly established constitutional and statutory rights and acted outside the scope of his authority in approving these policies.

22.     Christopher Lewis is an individual and School District school board member who voted in favor of the policies at issue in this case. As a school board member he requires the students and parents of the School District to comply with the contested policies set forth in this Complaint. Defendant Lewis violated Plaintiffs' clearly established constitutional and statutory rights and acted outside the scope of his authority in approving these policies.

23.     Nancy Deal is an individual and School District school board member and board Secretary who voted in favor of the Policies at issue in this case. As a school board member she requires the students and parents of the School District to comply with the contested policies set forth in this Complaint. Defendant Deal violated Plaintiffs' clearly established constitutional and

statutory rights and acted outside the scope of her authority in approving these policies.

24.     Sarah Belanger is an individual and School District school board member and board Treasurer who voted in favor of the Policies at issue in this case. As a school board member she requires the students and parents of the School District to comply with the contested policies set forth in this Complaint. Defendant Belanger violated Plaintiffs' clearly established constitutional and statutory rights and acted outside the scope of her authority in approving these policies.

25.     Kathy Hayes is an individual and School District school board member who voted in favor of the Policies at issue in this case. As a school board member she requires the students and parents of the School District to comply with the contested policies set forth in this Complaint. Defendant Hayes violated Plaintiffs' clearly established constitutional and statutory rights and acted outside the scope of her authority in approving these policies.

26.     Joel Gerring is an individual and was a School District school board member who voted in favor of the Policies at issue in this case. As a school board member he required the students and parents of the School District to comply with the contested policies set forth in this Complaint. Defendant Gerring violated Plaintiffs' clearly established constitutional and statutory rights and acted outside the scope of his authority in approving these policies.

## STATEMENT OF FACTS

27.     The School District adopted the following policies, practices, customs, and procedures promoting and forcing the approval of only one viewpoint on the issues of sexual orientation, gender identity, and gender expression:

A.      **Policy 4900 – Fair Employment Clause** (adopted November 6, 2017). The policy added a new privileged category of "sexual orientation."   This policy mandates non-

GREAT LAKES JUSTICE CENTER

discrimination on the new category for the awarding of any "contracts in excess of $15,000.00" (see Exhibit A).

B.     **Policy 7500 – Guidance Program** (adopted November 6, 2017). The policy added new privileged categories of "sexual orientation, gender identity, gender expression" despite language stating that the policy already applied to "all individual students" (see Exhibit B).

C.     **Policy 8010 – Equal Educational Opportunity** (adopted November 6, 2017). The policy added new privileged categories of "sexual orientation, gender identity, gender expression." This policy mandates "non-discrimination" for "any educational program or activity conducted by the district" including participation in "athletics" and "extracurricular activities." The policy permits any individual to use the same showers, locker rooms, restrooms, and other facilities and programs designated for the opposite biological sex (see Exhibit C).

D.     **Policy 8011 – Gender Identity** (adopted November 6, 2017). The policy added new privileged categories of "sexual orientation, gender identity, or gender expression." Defendants have required the acceptance of any sexual orientation or gender identity asserted by a student without question; the policy does not require the parents to be notified of any such assertion or choice by their child. Parents are further required to comply with this policy regardless of their sincerely held religious or other beliefs. The policy permits any individual to use the same showers, locker rooms, restrooms, and other facilities and programs designated for the opposite biological sex (see Exhibit D).

E.     **Policy 8040 – School Admissions** (adopted October 2, 2017). The policy added new privileged categories of "sexual orientation, gender identity, gender expression" for

GREAT LAKES JUSTICE CENTER

GREAT LAKES JUSTICE CENTER

the admission of Non-Resident Students. The policy permits any individual to use the same showers, locker rooms, restrooms, and other facilities and programs designated for the opposite biological sex (see Exhibit E).

F.      **Policy 8260-R – Bullying** (adopted October 2, 2017). The policy defines "harassment" to include new privileged categories of "sexual orientation, gender identity, gender expression." The policy prohibits "aggressive behavior" against other students and can lead to the expulsion of a student and exclusion of a parent from school property. Defendants' policy defines "aggressive behavior" to include speech and unintentional "emotional" harm (see Exhibit F).

G.      **Policy 8720 – Student Organizations** (adopted October 2, 2017). The policy added new privileged categories of "sexual orientation, gender identity, gender expression," despite language already requiring membership to be "open to all interested and eligible students" (see Exhibit G).

28.     The School District adopted, authorized, and approved these policies, which promote and force the approval of alternate sexual lifestyles and behavior in direct opposition to, and with the disapproval of, Plaintiffs' personal identity, autonomy, and their sincerely held religious beliefs and convictions and in violation of federal and state statutes and constitutional provisions.

29.     The School District adopted, authorized, and approved these policies, which promote and force the approval of alternate sexual lifestyles and behavior in a manner that infringes upon Plaintiffs' personal identity, autonomy, and their sincerely held religious beliefs and convictions and constitutional right to oppose such policies and freely speak out on such issues in accordance with their sincerely held religious beliefs.

30.     The School District adopted a policy position that discriminates against Plaintiffs' personal identity, autonomy, and their sincerely held religious beliefs and silences and punishes any opposition to the policies. The School District treats such opposition as bullying and hate speech. The School District, through its policies, practices, customs, and procedures, accepts, promotes, and endorses its policy position in its public schools that forces Plaintiffs' to violate their sincerely held religious beliefs.

31.     The School District adopted, authorized, and approved policies, practices, customs, and procedures that portray alternate sexual lifestyles solely in a positive light and prohibit any contrary viewpoint, such as Plaintiffs' sincerely held religious viewpoint. Religious viewpoints, such as those held by Plaintiffs, that do not affirm and promote alternate sexual lifestyles are treated as harassment, bullying, hate speech, and homophobic.

32.     The School District through its training, supervision, policies, practices, customs, and procedures indoctrinate students to believe that religious opposition to such alternate sexual lifestyles is harassment, bullying, hate speech, and homophobic. This indoctrination creates a hostile school environment that favors the stated alternate sexual lifestyles and disfavors and is hostile toward sincerely held religious beliefs opposing such actions and to those holding more traditional views.

33.     Pursuant to Policy 7175-R (see Exhibit H), the School District requires all parents to comply with the Student Handbook. Parents must also mandate that their child comply with all school rules and regulations, including those policies at issue herein.

34.     Policy 8190 (Behavior Code – see Exhibit I) references the expectations for student and parent behavior and consequences for violation of the behavioral expectations in the School District's "Code of Conduct" handbook.

GREAT LAKES JUSTICE CENTER

35.     The School District Student Handbook incorporates the Code of Conduct and makes it clear that all students and parents are expected to obey all Board Policies and the rules contained in the Code of Conduct.

36.     If a student violates any Board Policy, Code of Conduct or Student Handbook requirement, the student is subject to discipline ranging from a warning to suspension to expulsion (Policy 8350, Policy 8350-R, Code of Conduct, Student Handbook).

37.     The School District through its training, supervision, policies, practices, customs, and procedures is violating Policy 7800 (Exhibit J) that requires students in the School District to be tolerant of religious points of view, not to disparage religious beliefs, and to foster understanding of religious points of view. Mandating affirmation of alternative sexual lifestyles under threat of discipline or negative consequences for failing to comply with the above policies violates policy 7800.

38.     The School District through its training, supervision, policies, practices, customs, and procedures mandating affirmation and approval of alternative sexual lifestyles contrary to Plaintiffs' religious beliefs constitutes harassment and bullying aimed at all parents and students who disagree with the School District. These policies are the moving force behind the constitutional and statutory violations set forth in this Complaint.

39.     The School District through its training, supervision, policies, practices, customs, and procedures directs and trains teachers and all school employees to enforce its policies and viewpoint, and to stop speech or action that it improperly labels as bullying, hate speech, homophobic, or otherwise not approving of alternative sexual lifestyles. Merely expressing disagreement with the policies or alternative sexual lifestyles is treated as bullying or harassment by the School District.

GREAT LAKES JUSTICE CENTER

11

40.     The purpose of the School District's training, supervision, policies, practices, customs, and procedures is to indoctrinate students into believing that alternative sexual lifestyles are approved by all and to shame and blame those who believe it is wrong and immoral. In particular the purpose is to make those who oppose alternative sexual lifestyles on moral and religious grounds to feel guilty for holding those beliefs and to portray those beliefs as intolerant, harmful, hateful, and destructive. In sum, the purpose of the School District's policy changes is to place blame, guilt, and shame onto those who oppose these alternative sexual lifestyle categories on moral and religious grounds, and to violate, stifle, and chill the constitutional rights of parents and students.

41.     The School District has created a school environment that favorably promotes the agenda of alternative sexual lifestyle activists while creating an environment that is hostile toward and disfavors students and families that oppose these policies based upon their sincerely held moral and religious beliefs, and who object to the close interaction of males and females together in intimate settings such as showers, locker rooms and bathrooms.

42.     The School District's policies, practices, customs, and procedures encourage school officials, and others, to silence and disparage opinions, ideas, and viewpoints that disfavor alternative sexual lifestyles.

43.     The School District's training, supervision, policies, practices, customs, and procedures chill speech and the expression of religious viewpoints, such as those held by Plaintiffs.

44.     The School District's training, supervision, policies, practices, customs, and procedures allow biologically intact males to enter and use the locker rooms, showers, bathrooms and other facilities used exclusively by biological females.

45.     The School District's training, supervision, policies, practices, customs, and

procedures allow biologically intact females to enter and use the locker rooms, showers, bathrooms and other facilities used exclusively by biological males.

46.    The School District's training, supervision, policies, practices, customs, and procedures demean and diminish the personal autonomy and dignity of Plaintiffs and all students who have a differing viewpoint and disagree with the School District's policies and actions.

### COUNT I – DEFENDANTS ACTED WITHOUT LEGAL AUTHORITY

47.    Plaintiffs hereby incorporate and repeat herein paragraphs 1 through 46 above as if fully restated herein.

48.    The School District and its Board are responsible for creating, adopting, approving, ratifying, and enforcing the policies, practices, customs and procedures of the School District as set forth in this Complaint.

49.    The School District Board acts as a "legislative body in formulating and adopting policy" (see Exhibit K – Board Policy/By-Laws 1000) and shall make reasonable policies necessary to carry on the functions of a public school (see Exhibit L – Policy 1032 Powers and Duties).

50.    The School District Board's authority derives from the Michigan Constitution and state law, and the Board operates as a "general powers school district" (see Exhibit M – Policy 1010 District Legal Status; MCL 380.11a).

51.    Defendants operate under the auspices of, and under the authority granted by, the state legislature and are a state body bound by, and subordinate to, the state legislature.

52.    Despite Plaintiffs' objections to Defendant School District's policies (4900, 7500, 8010, 8011, 8040, 8260-R, and 8720), Defendant passed said policies and now enforces and demands that all parents and students obey and submit to said policies.

53.    The School District acted outside the scope of its authority in adding the new "non-discrimination" categories of "sexual orientation, gender identity, or gender expression."

54.    The School District is not granted authority to act as the state legislature by extending protection to categories not enumerated in Michigan's civil rights laws because the Michigan Legislature occupies the field in this area.

55.    The Michigan Legislature enacted the Elliott-Larsen Civil Rights Act (ELCRA) (MCL 37.2101 et. seq.), a pervasive regulatory scheme that regulates and controls discrimination issues in Michigan.

56.    The Michigan Legislature's purpose in enacting ELCRA was to prevent discrimination and provide uniformity across the State of Michigan.

57.    The School District only has the general powers delegated to it by the State Legislature (MCL 380.11a). The School District is not granted authority to add additional categories not enumerated in ELCRA.

58.    Article IV, §1 of the Michigan Constitution provides that "[t]he legislative power of the State of Michigan is vested in a senate and a house of representatives." The Legislature has explicitly refused to add sexual orientation, gender expression, or gender identity categories at least eleven times over the past thirty years. The School District cannot supplant or preempt the Michigan Legislature's authority in this field.

59.    The School District has the constitutional duty to apply and enforce state law as written and enacted by the Michigan Legislature.

60.    Because the School District's amended policies are not expressly or impliedly mandated or authorized by state law, its actions are an *ultra vires* activity for which the School District is liable.

GREAT LAKES JUSTICE CENTER

61.     The Michigan Legislature explicitly rejected legislation eleven times since 1999 to add categories to ELCRA such as sexual orientation, gender identity, and gender expression (see Michigan Legislature HB 5959 (2014), HB 5804 (2014), SB 1053 (2014), SB 1063 (2012), HB 4192 (2009), HB 4160 (2007), SB 0787 (2005), HB 4956 (2005), SB 0609 (2003), HB 4850 (2003), and HB 5107 (1999)).

62.     Defendants lack any legal authority to independently expand the ELCRA non-discrimination categories by adding categories to its policies that the legislature has explicitly rejected.

63.     As a direct and proximate result of the School District's constitutional violations and *ultra vires* activity, Plaintiffs have suffered, are suffering, and will continue to suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief. Additionally, Plaintiffs are entitled to nominal damages and compensatory damages for the loss of their constitutional rights.

## COUNT II –THE SCHOOL DISTRICT VIOLATED THE MATT EPLING SAFE SCHOOL LAW (MCL 380.1310b)

64.     Plaintiffs hereby incorporate and repeat herein paragraphs 1 through 63 above as if fully restated herein.

65.     The School District and its Board are responsible for creating, adopting, approving, ratifying, and enforcing the bullying policies, practices, customs and procedures of the School District as set forth in this Complaint.

66.     The Matt Epling Safe School Law (MCL 380.1310b(5)(c)) provides that all school district bullying policies must include "[a] provision indicating that all pupils are protected under the policy and that bullying is equally prohibited **without regard to its subject matter or motivating animus**." (emphasis added).

GREAT LAKES JUSTICE CENTER

15

67.     By adding and specifically listing new privileged categories to its bullying policy (8260-R), the School District violated the The Matt Epling Safe School Law because it referred to a specific subject matter and motivating animus.

68.     As a direct and proximate result of the School District's statutory violations, Plaintiffs have suffered, are suffering, and will continue to suffer, irreparable harm, entitling them to declaratory and injunctive relief.

<u>**COUNT III - PARENT'S FUNDAMENTAL CONSTITUTIONAL RIGHTS**
**(Fourteenth Amendment; MCL 380.10)**</u>

69.     Plaintiffs hereby incorporate by reference paragraphs 1 through 68 as if fully restated herein.

70.     By reason of the aforementioned training, supervision, acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, Defendants deprived Plaintiffs of their fundamental constitutional right to control and direct the upbringing and education their children in violation of the Fourteenth Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

71.     Defendants violated MCL 380.10 by infringing on Plaintiffs' fundamental parental rights and by failing to cooperate with parents and failing to provide a safe and positive educational environment for all students.

72.     The School District's training, supervision, policies, practices, customs, and procedures, for example, Policy 8011, gives the School District unilateral authority to decide what is in the best interest of a child and the authority to refuse to notify a parent of the assertion of any gender or sexual orientation choice purportedly made by their child at school. Such a policy violates the parent's statutory and constitutional right to control and direct the upbringing and

GREAT LAKES JUSTICE CENTER

education of their children consistent with their religious faith and it violates MCL 380.10 by failing to cooperate with parents.

73.     The School District's training, supervision, policies, practices, customs, and procedures, for example, Policy 8011, requires the School District to allow students and other individuals to use the showers, locker rooms, bathrooms and other facilities of the opposite sex, thereby violating the parents' constitutional right to control and direct the upbringing and education of their children.

74.     The School District's training, supervision, policies, practices, customs, and procedures, for example, Policy 8010, requires the School District to allow students to participate in athletics, extracurricular activities and other educational programs of the opposite sex, thereby violating the parents' constitutional right to control and direct the upbringing and education of their children.

75.     The School District's training, supervision, policies, practices, customs, and procedures, for example, Policy 7500, requires the School District to only provide counseling services that approve and promote alternative sexual lifestyles, thereby violating the parents' constitutional right to control and direct the upbringing and education of their children.

76.     The School District's training, supervision, policies, practices, customs, and procedures, for example, Policy 8260-R, requires the School District to punish students for alleged harassment or bullying of other students for merely expressing opposition to the School District's approved alternative sexual lifestyles, or for acting with purported "aggressive behavior" against other students with whom they simply disagree, thereby violating the parents' constitutional right to control and direct the upbringing and education of their children.

77.     The School District's training, supervision, policies, practices, customs, and

procedures, for example, Policy 8720, requires the School District to require students to approve, affirm, and promote alternate sexual lifestyles through their student organizations, thereby violating the parents' constitutional right to control and direct the upbringing and education of their children.

78.     The School District's training, supervision, policies, practices, customs, and procedures, will punish and impose discipline on any student and parent for alleged violations of Defendants' new policies, simply for exercising their right to raise and educate their children. Defendants' actions injure Plaintiffs by violating their constitutional rights through threat of discipline and sanction by the School District for failure to comply with its new policies.

79.     As a direct and proximate result of Defendants' violation of the Fourteenth Amendment, Plaintiffs have suffered, are suffering, and will continue to suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief. Additionally, Plaintiffs are entitled to nominal damages and compensatory damages for the loss of their constitutional rights.

### COUNT IV - RIGHT TO PRIVACY, PERSONAL AUTONOMY, AND PERSONAL IDENTITY (Fourteenth Amendment; 42 U.S.C. § 1983)

80.     Plaintiffs hereby incorporate by reference paragraphs 1 through 79 as if fully restated herein.

81.     By reason of the aforementioned training, supervision, acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, Defendants deprived Plaintiffs of their right to privacy, personal identity and personal autonomy in violation of the Fourteenth Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

82.     By favoring and enforcing policies that approve of and promote alternative sexual

GREAT LAKES JUSTICE CENTER

lifestyles over Plaintiffs' right to privacy, personal identity and personal autonomy, Defendants violate Plaintiffs' Fourteenth Amendment rights.

83.     Defendants' conduct deprives Plaintiffs of their personal choices central to individual dignity and autonomy, including intimate choices defining personal identity and beliefs by stigmatizing and labeling their sincerely held religious beliefs as discriminatory or an act of bullying.

84.     The School District's training, supervision, policies, practices, customs, and procedures, for example, Policy 8011, allows the School District to refuse to notify a parent of the assertion of any gender or sexual orientation choice purportedly made by their child at school, thereby violating the parent's right to personal identity and personal autonomy.

85.     The School District's training, supervision, policies, practices, customs, and procedures, for example, Policy 8011, requires the School District to allow students and other individuals to use the showers, locker rooms, bathrooms and other facilities of the opposite sex, thereby violating parents' and students' constitutional right to privacy, personal identity, and personal autonomy.

86.     The School District's training, supervision, policies, practices, customs, and procedures, for example, Policy 8010, requires the School District to allow students to participate in athletics, extracurricular activities and other educational programs of the opposite sex, thereby violating the parents' and students' constitutional right to privacy, personal identity, and personal autonomy.

87.     The School District's training, supervision, policies, practices, customs, and procedures, for example, Policy 7500, requires the School District to only provide counseling services that approve and promote alternative sexual lifestyles, thereby violating parents' and

19

students' constitutional right to privacy, personal identity, and personal autonomy.

88.     The School District's training, supervision, policies, practices, customs, and procedures, for example, Policy 8260-R, requires the School District to punish students for alleged harassment or bullying of other students for merely expressing opposition to the School District approved alternative sexual lifestyles, or for acting with purported "aggressive behavior" against other students with whom they simply disagree, thereby violating parents' and students' constitutional right to privacy, personal identity, and personal autonomy.

89.     The School District's training, supervision, policies, practices, customs, and procedures, for example, Policy 8720, requires the School District to require students to approve and endorse alternate sexual lifestyles through their student organizations, thereby violating parents' and students' constitutional right to privacy, personal identity, and personal autonomy.

90.     The School District's training, supervision, policies, practices, customs, and procedures, will punish and impose discipline on any parent or student for exercising their right to privacy, personal identity, and personal autonomy. Defendants' actions injure Plaintiffs by violating their constitutional rights through threat of discipline and sanction by the School District for failure to comply with its new policies.

91.     As a direct and proximate result of Defendants' violation of the Fourteenth Amendment, Plaintiffs have suffered, and will suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief. Additionally, Plaintiffs are entitled to nominal damages and compensatory damages for the loss of their constitutional rights.

## COUNT V - FREEDOM OF SPEECH
### (First Amendment; 42 U.S.C. § 1983)

92.     Plaintiffs hereby incorporate by reference paragraphs 1 through 91 as if fully

20

restated herein.

93.     By reason of the aforementioned training, supervision, acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, Defendants deprived Plaintiffs of their right to freedom of speech in violation of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

94.     By punishing Plaintiffs' speech and religious viewpoint, Defendants violate Plaintiffs' First Amendment right to freedom of speech through favoring and mandating its viewpoint on all parents and students.

95.     The School District's training, supervision, policies, practices, customs, and procedures, which were the moving force behind the violation of Plaintiffs' right to freedom of speech, were viewpoint based in violation of the First Amendment.

96.      The School District's training, supervision, policies, practices, customs, and procedures, for example, Policy 7500, requires the School District to only provide counseling services that approve and promote alternative sexual lifestyles, thereby violating, and substantially interfering with, the parents' and students' right to freedom of speech.

97.      The School District's training, supervision, policies, practices, customs, and procedures, for example, Policy 8260-R, requires the School District to punish students for alleged harassment or bullying of other students for merely expressing opposition to the School District approved alternative lifestyles, or for acting with "aggressive behavior" against other students with whom they simply disagree, thereby violating, and substantially interfering with, the parents' and students' right to freedom of speech.

98.      The School District's training, supervision, policies, practices, customs, and

procedures, for example, Policy 8720, requires the School District to require students to approve and endorse alternate sexual lifestyles through their student organizations, thereby violating, and substantially interfering with, the parents' and students' right to freedom of speech.

99.     The School District's training, supervision, policies, practices, customs, and procedures, will punish and impose discipline on any parent or student for exercising their right to freedom of speech. Defendants' actions injure Plaintiffs by chilling their speech activity through threat of discipline and sanction by the School District for failure to comply with its new policies.

100.     As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiffs have suffered, and will suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief. Additionally, Plaintiffs are entitled to nominal damages and compensatory damages for the loss of their constitutional rights.

### COUNT VI - FREE EXERCISE OF RELIGION
### (First Amendment; 42 U.S.C. § 1983)

101.     Plaintiffs hereby incorporate by reference paragraphs 1 through 100 as if fully restated herein.

102.     By reason of the aforementioned training, supervision, acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, Defendants deprived Plaintiffs of their right to the free exercise of their sincerely held religious beliefs in violation of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

103.     Defendants violate Plaintiffs' First Amendment right to freely exercise their religious beliefs by mandating policies that approve of and promote alternative sexual lifestyles which substantially interferes with Plaintiffs' religious free exercise rights.

104.     Defendants' policies violate the First Amendment by punishing parents and

22

students who exercise their religious beliefs in connection with human sexuality and the promotion of traditional sexual lifestyles.

105.    Plaintiffs' compliance with their sincerely held religious beliefs is a religious exercise.

106.    Defendants' policies and practices are not laws of general applicability as they specifically target Christians who share Plaintiffs' sincerely held religious views, but leave untouched students who ascribed to other or no faith traditions.

107.    By design, Defendants' policies and practices are imposed on some religious parents and students, but not on others, resulting in unjust discrimination amongst religious beliefs.

108.    Defendants' policies and practices further no compelling governmental interest as they directly violate Plaintiffs' First Amendment rights to free exercise of religion.

109.    Defendants' policies and practices fail to provide the least restrictive means of furthering any stated interest and are not narrowly tailored.

110.    Defendants' policies and practices create government-imposed, coercive pressure on Plaintiffs to change or violate their sincerely held religious beliefs.

111.     The School District's training, supervision, policies, practices, customs, and procedures, for example, Policy 8011, allows the School District to refuse to notify parents of the assertion of any gender or sexual orientation choice purportedly made by their child at school, thereby violating, and substantially interfering with, the parents' constitutional right to freely exercise their religion.

112.    The School District's training, supervision, policies, practices, customs, and procedures, for example, Policy 8011, requires the School District to allow students and other individuals to use the showers, locker rooms, bathrooms and other facilities of the opposite sex,

thereby violating, and substantially interfering with, the parents' and students' constitutional right to freely exercise their religion.

113.    The School District's training, supervision, policies, practices, customs, and procedures, for example, Policy 7500, requires the School District to only provide counseling services that approve and promote alternative sexual lifestyles, thereby violating, and substantially interfering with, the parents' and students' constitutional right to freely exercise their religion.

114.    The School District's training, supervision, policies, practices, customs, and procedures, for example, Policy 8260-R, requires the School District to punish students for alleged harassment or bullying of other students for merely expressing opposition to the School District approved alternative lifestyles, or for acting with purportedly "aggressive behavior" against other students with whom they simply disagree, thereby violating, and substantially interfering with, the parents' and students' constitutional right to freely exercise their religion.

115.    The School District's training, supervision, policies, practices, customs, and procedures, for example, Policy 8720, requires the School District to require students to approve and endorse alternate sexual lifestyles through their student organizations, thereby violating, and substantially interfering with, the parents' and students' constitutional right to freely exercise their religion.

116.    The School District's training, supervision, policies, practices, customs, and procedures, will punish and impose discipline on any parent or student for exercising his or her right to free exercise of their religious beliefs. Defendants' actions injure Plaintiffs by chilling their religious activity and religious speech through threat of discipline and sanction by the School District for failure to comply with its new policies.

117.    As a direct and proximate result of Defendants' violation of the First Amendment,

Plaintiffs have suffered, and will suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief. Additionally, Plaintiffs are entitled to nominal damages and compensatory damages for the loss of their constitutional rights.

### COUNT VII - MICHIGAN CONSTITUTIONAL VIOLATIONS

118.    Plaintiffs hereby incorporate by reference paragraphs 1 through 117 as if fully restated herein.

119.    By reason of the aforementioned training, supervision, acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, Defendants deprived Plaintiffs of their rights under Michigan's Constitution of 1963 as follows:

A.      **Article I, §2 Discrimination**. Defendants' Policies 4900, 7500, 8010, 8011, 8040, 8260-R, and 8720, for all the reasons as stated above (in particular, paragraphs 102-111), deny Plaintiffs the enjoyment of their civil or political rights and discriminate against them in the exercise of those rights because of religion.

B.      **Article I, §4 Freedom of worship and religious belief**. Defendants' Policies 4900, 7500, 8010, 8011, 8040, 8260-R, and 8720, for all the reasons as stated above (in particular, paragraphs 102-111), deny Plaintiffs and students at the School District the right and "liberty to worship God according to the dictates of his own conscience," and further "diminishes the civil and political rights, privileges and capacities" of Plaintiffs and students at the School District on account of their religious belief.

C.      **Article I, §5 Freedom of speech and of press**. Defendants' Policies 4900, 7500, 8010, 8011, 8040, 8260-R, and 8720, for all the reasons as stated above (in particular paragraphs 93-100), deny Plaintiffs and students at the School District the right to "freely speak, write, express and publish his views on all subjects" and restrain or abridge their

GREAT LAKES JUSTICE CENTER

liberty of speech.

D.       **Article VIII, §2 Free public elementary and secondary schools; discrimination**.

Defendants' Policies 4900, 7500, 8010, 8011, 8040, 8260-R, and 8720, for all the reasons as stated above, deprive Plaintiffs and students at the School District their right to participate in Michigan's "system of free public elementary and secondary schools as defined by law. Every school district shall provide for the education of its pupils without discrimination as to religion, creed, race, color or national origin."

120.     The School District's training, supervision, policies, practices, customs, and procedures, will punish and impose discipline on any parent or student for exercising his or her state constitutional right to free speech and other rights as stated above. Defendants' actions injure Plaintiffs by chilling their speech and constitutionally protected activity through threat of discipline and sanction by the School District for failure to comply with its new policies.

121.     The School District's training, supervision, policies, practices, customs, and procedures, have forced Plaintiffs Edward and Erin Reynolds to remove their children from the School District and enroll them in a private school at their own expense, thereby depriving Plaintiffs Reynolds and their children, A.R. and E.R., of their constitutional right to receive a free public education as guaranteed under Article VIII, §2, by forcing them to choose between exercising their religious beliefs or receiving the free public education.

122.     As a direct and proximate result of Defendants' violation of the state constitutional provisions specified above, Plaintiffs have suffered, are suffering, and will continue to suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief. Additionally, Plaintiffs are entitled to nominal damages and compensatory damages for the loss of their state constitutional rights.

## COUNT VIII - TITLE IX VIOLATION (20 U.S.C. §1681 et. seq.)

123.    Plaintiffs hereby incorporate by reference paragraphs 1 through 122 as if fully restated herein.

124.    Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance" (20 U.S.C. § 168l(a)).

125.    Under Title IX, discrimination "on the basis of sex" encompasses discrimination based on biological differences between men and women.

126.    The School District is an educational program receiving Federal financial assistance.

127.    Pursuant to 42 U.S.C. 2000d-7, the School District is not immune from this action and is liable for all damages that naturally flow from its improper training, supervision, policies, practices, customs, and procedures.

128.     By allowing biologically intact males to participate in athletics and other programs for the opposite sex at the School District, the School District has and continues to subject parents and students to discrimination and the loss of participation in educational programs and activities at the School District "on the basis of sex," which violates the parents' and students' rights under Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681, et seq.). The School District is discriminating against biological girls by permitting biological boys to take spots on a female sports team, thus denying girls the benefits of educational and sports programs.

129.     By allowing biologically intact females to participate in athletics and other

27

programs for the opposite sex at the School District, the School District has and continues to subject parents and students to discrimination and the loss of participation in educational programs and activities at the School District "on the basis of sex," which violates the parents' and students' rights under Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681, et seq.). The School District is discriminating against biological boys by permitting biological girls to take spots on a male sports team, thus denying boys the benefits of educational and sports programs.

130.    By means of these policies, the School Board willfully and intentionally discriminates against parents and students participating in, denying them the benefits of, and subjecting them to discrimination in educational programs and activities at the School District "on the basis of sex," which violates their rights under Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681, et seq.).

131.    As a direct and proximate result of Defendants' willful and intentional violations of Title IX as specified above, Plaintiffs have suffered, are suffering, and will continue to suffer, irreparable harm, including the loss of their statutory rights, entitling them to declaratory and injunctive relief, as well as nominal damages and compensatory damages, and to the termination of federal financial assistance to the School District under Title IX.

### COUNT IX - CONSTITUTIONAL VAGUENESS VIOLATIONS
### (First and Fourteenth Amendments; 42 U.S.C. § 1983)

132.    Plaintiffs hereby incorporate by reference paragraphs 1 through 131 as if fully restated herein.

133.    The Due Process clauses of the United States Constitution and the Michigan Constitution require that the law provide predictability for all citizens. U.S. Const., Am. 14; Mich. Const. 1963, Article 1, §17.

28

GREAT LAKES JUSTICE CENTER

134.    An unambiguously drafted school policy affords prior notice to the parents and students of conduct proscribed. A fundamental principle of due process, embodied in the right to prior notice, is that a policy is void for vagueness where its prohibitions are not clearly defined.

135.    The School District's policies must give an ordinary parent and student notice of what is prohibited, so that a person may act accordingly.

136.    If a parent or student has to guess at what a policy means, or if the policy is not clearly defined, then the policy is void for vagueness.

137.    The School District's policies (4900, 7500, 8010, 8011, 8040, 8260-R, and 8720) are vague and do not provide clear direction to the parents and students of the school district in that definitions of terms like "sexual orientation," "gender identity," "gender expression," "transgender," "harassment," "aggressive behavior," and "bullying" are not clearly defined and do not protect the constitutional rights of parents and students.

138.    The School District's training, supervision, policies, practices, customs, and procedures, permits arbitrary enforcement and will punish and impose discipline on any parent or student for alleged violations of Defendants' vague new policies in violation of the United States and Michigan Constitutions.

139.    As a direct and proximate result of Defendants' constitutional violations, Plaintiffs have suffered, are suffering, and will continue to suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief. Additionally, Plaintiffs are entitled to nominal damages and consequential damages for the loss of their constitutional rights.

### COUNT X - ELLIOTT-LARSEN CIVIL RIGHTS ACT VIOLATION - INTIMIDATING, HOSTILE, AND OFFENSIVE ENVIRONMENT (MCL 37.2103(i)(*iii*))

140.    Plaintiffs hereby incorporate and repeat herein paragraphs 1 through 139 above as if fully restated herein.

141.    Defendant School District operates its schools which are a place of public accommodation as defined in Michigan's Elliott-Larsen Civil Rights Act (hereinafter referred to as the Act), MCL 37.2301(a)(iii).

142.    Defendant School District is a person, as that term is defined in the Act, MCL 37.2103(g).

143.    Defendant School District passed policies (4900, 7500, 8010, 8011, 8040, 8260-R, and 8720) that violated the Act and deprived Plaintiffs of their civil rights by:

A.    Subjecting parents and students, because of their sex, to conduct and communication of a sexual nature, which has the purpose and effect of denying them the full benefit of the public accommodation facilities at Defendants' school buildings and denies them full and equal access to the use and privileges of its public accommodation.

B.    Instituting a policy of a sexual nature which permits males to utilize the female's facilities at the schools, including, but not limited to, the locker room, showers, changing rooms, and restrooms while females are simultaneously using said facilities.

C.    Instituting a policy that allows any male to simply claim he sincerely self-identifies as a female and he would then be given full access to simultaneously use any and all facilities at the schools with all females.

D.      Instituting a policy of a sexual nature which permits females to utilize the male's facilities at the schools, including, but not limited to, the locker room, showers, changing rooms, and restrooms while males are simultaneously using said facilities.

E.      Instituting a policy that allowed any female to simply claim she sincerely self-identifies as a male and she would then be given full access to simultaneously use any and all facilities at the schools with all males.

F.      Instituting a policy that creates an intimidating, hostile, and offensive public accommodation for the following reasons:

   i.      Females cannot privately use the locker room, showers, and restrooms at the schools without the offensive presence of a male.

   ii.      Females would be subjected to any male who wished to be present in the locker room/changing room while a female was changing her clothes, taking a shower, or using the restroom.

iii.      Minor girls would be subjected to having a male presence in the same area where they would be changing clothes, showering, or using the restroom.

iv.      Males cannot privately use the locker room, showers, and restrooms at the schools without the offensive presence of a female.

v.      Males would be subjected to any female who wished to be present in the locker room/changing room while a male was changing his clothes, taking a shower, or using the restroom.

vi.      Minor boys would be subjected to having a female presence in the same area where they would be changing clothes, showering, or using the restroom.

144.   The School District's policies have the purpose or effect of substantially interfering with the parents' and students' right to access and utilize public accommodations and public services, including education, and creates an intimidating, hostile, or offensive public accommodation, public service, and educational environment for all the above-stated reasons.

145.   As a direct and proximate result of Defendants' violations of the Act, Plaintiff parents and students have suffered, are suffering, and will continue to suffer, damages, including the following:

A.   Loss of use of school facilities.

B.   Fear about using the school facilities.

C.   Embarrassment and humiliation.

D.   Severe emotional distress.

E.   Loss of access to a free public education.

F.   All other damages that reasonably flow from Defendants' outrageous and illegal policies, practices, procedures, and actions.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs ask this Honorable Court:

A.   to declare that Defendants' policies (4900, 7500, 8010, 8011, 8040, 8260-R, and 8720) are invalid and unconstitutional for all the reasons as set forth in this Complaint;

B.   to declare that Defendants acted unconstitutionally, outside their authority, and in an *ultra vires* manner as set forth in this Complaint;

C.   to declare that Defendants violated Plaintiffs' fundamental constitutional rights as set forth in this Complaint;

D.   to declare that Defendants' training, supervision, policies (4900, 7500, 8010, 8011,

GREAT LAKES JUSTICE CENTER

8040, 8260-R, and 8720), practices, customs, and procedures violate Plaintiffs' fundamental constitutional rights, including their fundamental parental right to raise and educate their children, to freedom of speech, right to privacy, personal autonomy and personal dignity, and right to freely exercise their religious beliefs, all under the First and Fourteenth Amendments to the United States Constitution and Title IX of the Education Amendments of 1972 as set forth in this Complaint;

E.      to declare that Defendants' policies violate Michigan's Constitution and the Elliott-Larsen Civil Rights Act for all the reasons as stated above;

F.      to declare that Defendants' policies are vague and unconstitutional for the reasons as set forth in this Complaint;

G.      to issue preliminary and permanent injunctions enjoining Defendants' policies for all the reasons as set forth in this Complaint;

H.      to award Plaintiffs nominal damages and compensatory damages against all Defendants;

I.      to award Plaintiffs their reasonable attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988, Title IX, and other applicable law; and

J.      grant such other and further relief as is just and appropriate.

Respectfully submitted,

**GREAT LAKES JUSTICE CENTER:**

By:  David A. Kallman                    (P34200)
Attorney for Plaintiffs

**I HEREBY STATE AND AFFIRM THAT I HAVE HAD READ THE FOREGOING COMPLAINT AND THAT IT IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION, KNOWLEDGE AND BELIEF.**

DATED: January 16, 2018.

_____
Edward W. Reynolds, Individually

DATED: January 10, 2018.

_____
Edward W. Reynolds, as Next Friend for A.R.,
E.R. and A.B.

DATED: January 16, 2018.

_____
Erin L. Reynolds, Individually

DATED: January 16, 2018.

_____
Monica C. Schafer, Individually

DATED: January 16, 2018.

_____
Christopher D. Johnecheck, Individually